FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 0 1 2005
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CAPTAIN SHERIFF SAUDI,

                Plaintiff,

-against-

MARINE ATLANTIC, LTD., MONTE
CRISTO, SHIPHOLDING, LTD., and
V SHIPS SWITZERLAND, S.A., fka
Acomarit Services Maritimes, S.A.,

                Defendants.
------------------------------------------------------X

**MEMORANDUM AND ORDER**
**02 CV 2495 (SJF)(LB)**

BLOOM, United States Magistrate Judge:

      Plaintiff files the instant motion to compel defendants to comply with Court-ordered discovery and for sanctions.[1] Defendants have opposed plaintiff's motion and plaintiff has replied. Plaintiff contends that defendant Marine Atlantic, Ltd. ("MAL") failed to comply with the Court's July 16, 2004 order instructing Surendar Atil ("Atil") to produce certain documents, and asks the Court to (1) sanction MAL by finding this defendant subject to personal jurisdiction in this Court; (2) again compel production of the documents in question, and order that MAL's failure to comply will result in entry of a default judgment; (3) award appropriate costs and attorney's fees to plaintiff; and (4) grant plaintiff such further relief as to which he may be entitled. Plaintiff's motion is granted in part and denied in part.

---

[1] The Honorable Sandra J. Feuerstein has referred several motions, including defendants' motion to dismiss for lack of personal jurisdiction, to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). The Court ruled in its July 16, 2004 order, fn. 1, that "defendants' motion to dismiss for lack of personal jurisdiction shall not be restored to the active docket until the disclosures herein are completed." The disclosures ordered by the Court on July 16, 2004 are the subject of the instant motion to compel and for sanctions. Accordingly, the Court turns to the instant motion first.



## BACKGROUND

On September 27, 2002, the Honorable John G. Gleeson ordered the parties to conduct discovery solely on the issue of personal jurisdiction. The parties have wrangled acrimoniously ever since over this single issue in a process that has required significant management by the Court. By order dated July 16, 2004, I granted plaintiff's motion for reconsideration and instructed MAL's custodian of records, Surendar Atil,[2] to produce certain documents referred to in Atil's deposition by September 10, 2004. Discovery was reopened for this limited purpose only.

Atil was specifically ordered to produce the last payment to MAL's secretary, Robert Hamshaw ("Hamshaw"), and any documents that concern the end of MAL's relations with Hamshaw; and, for the period from January 1, 1994 to April 30, 2002, tax returns, the documents used to prepare tax returns, audit reports, and contracts with persons or entities in New York. Although Atil stated at his deposition that certain of these documents were in the possession of the manager or MAL's attorney, he was ordered to produce them nonetheless because, in his capacity as MAL's custodian of records, he had "the legal right or the practical ability to obtain the documents" and could therefore be compelled to do so. The Honorable Sandra J. Feuerstein[3] overruled defendants' objections and affirmed the order to compel production of these documents

---

[2] Mr. Atil described himself as MAL's "main decision maker," Transcription of the Deposition of Surendar Atil at 4 ("Tr. __") and "representative," Tr. 5, and said he has "all powers to manage the affairs of this company" and "make[s] all decisions" on MAL's behalf, Tr. 6. Although Atil's precise title may be unclear, his authority to act on MAL's behalf is not. Jean Reymond, Judge at the Court of First Instance of Geneva, who presided over Atil's deposition in Switzerland, noted that Atil was questioned in his capacity as "guardian of ... files," Tr. 3, and appeared to be MAL's "de facto manager," Tr. 5. For the purposes of the instant motion, the Court will refer to Atil as MAL's custodian of records.

[3] This case was reassigned from Judge Gleeson to Judge Feuerstein on October 16, 2003.

on January 12, 2005. By endorsement on defendants's letter motion dated January 25, 2005, the Court granted defendants one final extension, to March 15, 2005, to comply with the Court's order. Defendants' counsel informed the Court by letter dated March 24, 2005 that MAL had timely complied with its order to compel and requested that the Court close jurisdictional discovery and take up defendants' motions to dismiss. Plaintiff responded with the instant motion for a renewed order to compel and for sanctions, stating that, contrary to its assertions, MAL had failed to comply with the Court's order.

Plaintiff's instant motion states that MAL produced only auditors' reports and financial statements for the tax years 1996-2002, which include no supporting documents of any kind, despite the fact that during his deposition Atil conceded the existence of the documents the Court ordered him to produce. In response, defendants contend that the documents in question either do not exist or have already been produced to plaintiff.

## DISCUSSION

Before determining what relief, if any, is appropriate on plaintiff's instant motion, the Court must assess defendants' performance in discovery to date and its impact on plaintiff's ability to pursue his claim. The Court concludes that defendants have, "whether through deliberate decision or extreme indifference to [their] obligations, failed to comply over an extended period of time both with [their] discovery obligations and with specific rulings of this court." Koehler v. The Bank Of Bermuda, Ltd., No. M18-302, 931745, 2003 WL 289640 (S.D.N.Y. Feb. 11, 2003).

3

I.  The Documents Atil Was Ordered to Produce

    a.  **Tax Returns and the Documents Used to Prepare Them**

Atil was ordered to produce tax returns and the documents used to prepare tax returns from January 1, 1994 to April 30, 2002. It is undisputed that no documents of this nature have been produced. In its opposition to plaintiff's instant motion ("Opp. at __"), defendants refer to Atil's July 21, 2004 affidavit, in which he states that he "reviewed all MAL documents in my custody" and found no documents "regarding the payment by MAL" of taxes to either New York State or the United States government. Opp. at 3. Defendants state that Atil never completed tax returns on behalf of MAL "in the sense that Americans fill out and submit tax returns to the Internal Revenue Service" and, moreover, that it is plaintiff's burden to prove that "MAL had a duty to report it's [sic] income to the State of New York and the United States federal government and he has failed to do so." Opp. at 4-5.

At his deposition, Atil was shown an addendum to MAL's contract with its management company, Acomarit,[4] requiring that a United States federal income tax return "must be filed annually by all ship owners or operators who have been in receipt of United States gross transportation income," and that "filing is required whether or not tax is due and/or exemption is claimed."[5] When asked about this document, Atil agreed that it "specified that it is necessary to file a tax return with the American authorities" and that it is "the manager of the ship who does it, ACOMARIT/V. SHIPS." Tr. 6. Atil further stated that he did not have copies of these returns, but that "the manager

---

    [4] Acomarit is now knows as V. Ships Switzerland S.A., but will be referred to herein as "Acomarit" for consistency.

    [5] This document is captioned "Appendix 7" and is attached to the transcript of Atil's deposition as Exhibit 2.

4

of the boat," Acomarit, "must have them." Id. Atil continued, saying that the owner of the ship "is supposed to give the manager the documents necessary to prepare these tax returns" and that he "must have given the order to transmit these documents and information." Id. Atil stated under oath that "all these documents are in the hands of the manager." Id.

First, defendants dissemble by pointing to Atil's affidavit, which was sworn to five short days after the Court's order, to attest that Atil conducted a diligent search for these records. Moreover, defendants stated in their January 25, 2005 letter to Court--which postdates Atil's affidavit- that they were "delighted" to comply with the Court's order, but required sixty days to complete the archival search that "**must** be undertaken ... to produce documents dating back to 1996"[6] (emphasis added.) The clear implication of defendants' January 25, 2005 letter was that they had not yet complied with the Court's order. The Court granted defendants' request for an extension. Defendants now suggest that Atil's affidavit shows that an appropriate search was completed in less than five days and, apparently, before defendants even knew that it had been done.

Second, Atil states in his affidavit that there were no documents *in his custody* regarding *payment* of taxes to the United States or the State of New York. While these statements may be true, they are also unresponsive to the Court's order. Atil clearly indicated at his deposition that MAL was required to file federal tax returns in the United States, that Acomarit does so on MAL's behalf, that he "must have" given the order to transmit the documents to prepare them, and that "all these documents" are in Acomarit's possession. Tr. 6. The Court's July 16, 2004 order acknowledged that certain documents "are with the manager" and compelled Atil to produce them nonetheless. The addendum to MAL's contract with Acomarit notes that filing is required whether or not tax is due;

---

[6] Atil was ordered to produce documents dating back to 1994, not 1996.

5

thus, the statement in Atil's affidavit that he found no documents regarding *payment* of taxes is irrelevant. Whether or not MAL was exempted from paying federal tax in the United States, Atil's deposition testimony confirmed plaintiff's contention that MAL was required to file a return.

Atil was ordered to produce tax returns for the years 1994 to 2002 and the documents used to prepare them. While defendants state in their March 17, 2005 letter to the Court that they "timely adhered" to the Court's order to compel, they now improperly renew their objections to that order. In response to the instant motion, defendants assert that plaintiff bears the "burden to prove that MAL had a duty to report it's [sic] income to the State of New York and the United States federal government." The Court ordered defendant to produce these documents, and their objections were overruled; defendants' statement that plaintiff bears the burden contravenes the Court's order. Orders of the Court must be obeyed, even if they are later shown to be erroneous. Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Int'l Union, No. 00 Civ. 3613(LAP), 2004 WL 1943099 (S.D.N.Y. August 27, 2004) (citing Davidson v. Dean, 204 F.R.D. 251, 258 (S.D.N.Y. 2001).) Furthermore, even if the burden on this issue continued to rest with plaintiff, plaintiff has more than met his burden based on Atil's deposition testimony. Although defendants argue that they need not prove a negative by showing they do *not* have to file a federal tax return in the United States, in light of the evidence presented by plaintiff, defendants should have done just that to convince the Court to deny plaintiff's instant motion.

6

### b. The Last Payment to Hamshaw and Documents Relating to the End of That Relationship

Defendants again rely on Atil's July 21, 2004 affidavit to establish that no documents exist regarding a last payment by MAL to Hamshaw or concerning the end of their business relationship. Defendants' reliance on Atil's affidavit is unavailing here for the same reasons outlined above. Atil stated at his deposition that there "must be" a document that concerns the end of relations with Hamshaw, and, less equivocally, that he "sent it" to defendants' attorney. Tr. 9. Even if Atil were merely speculating about the existence of this document, as defendants now suggest, Opp. at 3, they have failed to show that Atil took any steps whatsoever to correct the misimpression that he himself created by, for example, ordering the archival search that defendants said was necessary to comply with the Court's order. Instead, without conceding that any such document exists, defendants take this opportunity to "wonder what possible effect such a document could have on the jurisdictional analysis." Id. Again, once the Court has ordered a document produced, defendant's opinion on the matter is irrelevant. Metropolitan Opera Ass'n, 2004 WL 1943099 at *7. Finally, defendants state that "MAL would be delighted to find such a document and produce it, if it existed" because it might support defendants' position on the question of personal jurisdiction. Opp. at 3. Perhaps defendants should have looked for such a document. In any case, MAL shall now produce any documents relating to the end of its relationship with Hamshaw.

As to documents concerning MAL's final payment to Hamshaw, sufficient facts appear on the record to show that payments to Hamshaw were made electronically. Plaintiff attaches records of these electronic transfers to its instant motion as Exhibit C. MAL therefore need produce nothing more as to Hamshaw's final payment.

7

c.  **Audit Reports**

Defendants produced auditors' reports and financial statements from 1996 to 2002. These reports merely organize and summarize information. While the documents used to create these reports may have produced facts relevant to the question of jurisdiction, such as business transactions with persons or companies that are (or are not) based in New York, defendants were not ordered to produce the underlying documents. Such production may have established good faith on the part of defendants; however, since Atil was not ordered to produce the documents used to create these reports, defendants cannot be faulted for failing to proffer them. Auditors' reports and financial statements from 1994 and 1995 are likely to be equally unilluminating. Nonetheless, the Court ordered Atil to produce them, and MAL shall produce them to plaintiff now.

d.  **Contracts**

Defendants were ordered to produce contracts with persons or entities in New York from January 1, 1994 to April 30, 2002. Defendants state that they have produced no such documents because none exist. In support of their position, defendants proffer Atil's June 7, 2004 and July 21, 2004 affidavits to establish that Atil reviewed all the MAL documents in his custody and found no documents regarding contracts or charter agreements with New York persons or entities. As is the case with the documents discussed above, there is no indication that Atil sought to examine any documents that were not in his possession. In this case, however, Atil stated that he himself "kept copies of the contracts executed because of the intervention of Greg Doyle," although some contracts were never put in writing, Tr. 17. It is thus less troubling that he did not seek these documents from third parties. Nonetheless, in light of defendants' request for sixty days to conduct an archival

8

search, affidavits produced both before and immediately after the Court's order are insufficient to establish that Atil performed a diligent search of MAL's records.

As to plaintiff's specific assertion that defendants failed to produce a contract with Chase Manhattan Bank, New York, to which funds were transferred electronically on behalf of Robert Hamshaw, the Court takes judicial notice that Chase Manhattan is a Delaware corporation, and is listed as such on the New York Department of State Corporation and Business Entity Database.[7] It is therefore clear that the State of New York does not consider Chase Manhattan Bank to be a citizen here. However, the Court's order directed Atil to produce "contracts with persons or entities in New York from January 1, 1994 to April 30, 2002." While Chase Manhattan may not be considered a citizen of New York State, it is undeniably an entity *in* New York. Accordingly, defendants should have produced any contracts it entered into with Chase Manhattan Bank and any other person or entity that was "in New York" during the specified period. MAL shall produce any such documents now.

II.     Plaintiff's Motion for Sanctions and an Order to Compel

    a.     **The Sanction of Personal Jurisdiction**

Under Rule 37(b)(2) of the Federal Rules for Civil Procedure, a court may impose appropriate sanctions against a party who fails to comply with a discovery order. Insurance Corp. of Ireland, Ltd., v. Compagnie des Buxites de Guinee, 456 U.S. 694, 695 (1982); Volkart Brothers, Inc., v. M/V "Palm Trader", 130 F.R.D. 285 (S.D.N.Y. 1990). The Supreme Court has recognized that a constructive waiver of any objection to personal jurisdiction may be found, or a party may be

---

[7] http://appsext5.dos.state.ny.us/corp_public/CORPSEARCH.SELECT_ENTITY

estopped from disputing that it is subject to personal jurisdiction, if the party refuses to participate in jurisdictional discovery. Knox v. Palestine Liberation Organization, 2005 WL 712005 *5 (S.D.N.Y. March 21, 2005) (citing Insurance Corp. of Ireland, 456 U.S. at 703-07.) Before imposing such a sanction, the Court must find (1) that the sanction is just, and (2) that it specifically relates "to the particular 'claim' which was at issue in the order to provide discovery.'" Id. A finding of jurisdiction under Rule 37 offends due process only if this sanction is imposed as a "punishment" for a party's non-compliance; if the court merely adopts the presumption that a party's bad-faith failure to produce the ordered proofs operates as a constructive waiver, due process is satisfied. Id. at 706; Volkert Brothers, 130 F.R.D. at 288 (observing that "constitutional notions of fair play" under International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), are not offended when a court adopts the presumption of jurisdiction) (internal quotations omitted).

The defendants in Insurance Corp. of Ireland failed to respond to plaintiffs' discovery requests, and then failed to comply with the district court's order to compel production, arguing that the requested documents were not in their custody or control, but were kept by their brokers in London. Insurance Corp. of Ireland, 456 U.S. at 698-99. The district court ordered defendants to request the information and to produce it to plaintiffs within ninety days. Id. After one thirty-day extension to complete discovery, defendants offered to make their voluminous records available to plaintiffs at their London offices. Id. In response to plaintiffs' motion to compel, the district court noted that "no conscientious effort had yet been made to produce the requested information and that no objection had been entered to the discovery order." Id. The district court gave defendants sixty days to produce the information, and warned defendants that an order under Fed. R. Civ. P. 37(b)(2)(A) finding personal jurisdiction would be entered if defendants did not comply. Id. When

10

defendants failed to produce the information as ordered, the court imposed a finding of jurisdiction as a Rule 37 sanction. The Third Circuit affirmed the district court's jurisdictional ruling, and the Supreme Court held that such a sanction was permissible on the facts presented because it comported with the Rule 37 standards requiring any sanction to be both "just" and "specifically related to the particular claim which was at issue in the order to provide discovery." Id. at 707.

In the instant case, as in the case of Insurance Corp. of Ireland, the discovery plaintiff seeks specifically relates to the claim he is attempting to establish, which is that defendant MAL is subject to personal jurisdiction in this Court. Imposing personal jurisdiction as a sanction in this case would also be just. In deciding that the district court's finding of personal jurisdiction was just in Insurance Corp. of Ireland, the Supreme Court considered, *inter alia*, that defendants failed to produce the requested material despite repeated orders of the court, failed to show that they had made a good-faith effort to do so notwithstanding repeated agreements to comply, and that plaintiff's allegation of personal jurisdiction was not a frivolous claim. Id. at 708.

In the instant case, Atil was ordered to produce documents that he admitted existed during his deposition. Defendants objected to this order, and when it was affirmed, stated that they needed sixty days to search their archives to fully comply. Although defendants asserted soon after that they complied with the Court's order, they did not produce the documents required, proffering only auditors' reports and Atil's affidavits, which either predate the Court's order or are virtually contemporaneous with it.[8] In any event, despite repeated assurances to the Court of their "delight"

---

[8] Given that the Court issued its order in New York on July 16, 2004 and Atil's second affidavit was sworn to in Geneva, Switzerland on July 21, 2004, it is possible, if not likely, that Atil made the statements in his affidavit before he received word of the Court's order, and that his affidavit is therefore not responsive to it. In any event, it is *not* possible that the statements in Atil's affidavit reflect the undertaking of the diligent archival search that defendants' stated

11

in complying with the Court's order, defendants showed no effort to do so.

In light of defendants' statement that an archival search was necessary to comply with the Court's order and the timeline evidencing that no search was ever conducted, the Court is justified in concluding, as it now does, that defendants have acted in bad faith. As defendants note, sanctions may be justified when a court finds that a litigant has acted in bad faith. Opp. at 6. Furthermore, defendants arguments in opposition to the instant motion suggest that their failure to comply with the Court's order is willful. Defendants offer absolutely no evidence, for example, that Atil sought even one document relating to MAL's filing of taxes returns when Atil stated in his deposition both that these documents exist and that they "are in [Acomarit's] hands." Tr. 6. Defendants state in their opposition that "as sworn to by Mr. Atil, he has no such [tax] documents because none exist." Opp. at 5. In truth, Mr. Atil swore to the fact that these documents *do* exist. Such purposeful noncompliance with the Court's order is sufficiently willful to justify the imposition of substantial sanctions under Rule 37. See, e.g., Volkart Brothers, 130 F.R.D. at 290 (finding Rule 37 sanctions justified when defendant failed to provide information that was in defendant's control.)

Nor is plaintiff's allegation of personal jurisdiction in this action a frivolous claim. Defendants have long conceded that some contacts exist between MAL and New York, although they vigorously dispute that sufficient contacts exist to permit a finding of personal jurisdiction. For example, defendants admit that Hamshaw served as MAL's assistant secretary and that he resides in Bronxville, New York; that the closing for the purchase of the vessel Marine Atlantic occurred in New York; and that MAL entered into various contracts in New York relating to the management

---

would be necessary in their January 25, 2005 letter to the Court, which, as noted above, postdates Atil's affidavit.

and operation of the Marine Atlantic.[9] These facts provide a reasonable basis to suggest that jurisdiction may exist. Therefore, plaintiff's allegation of jurisdiction cannot be said to be a frivolous claim.[10]

In light of the foregoing, it would be just for the Court to find MAL subject to personal jurisdiction as a sanction under Rule 37. Such a sanction would not be imposed as a punishment, but rather as an "expression of the undoubted right of the lawmaker to create a presumption" where, as here, the Court finds that a party has acted in bad faith or has willfully failed to comply with the Court's orders. Insurance Corp. of Ireland, 456 U.S. at 705-06. Although MAL was not specifically warned that it faced sanctions if Atil failed to comply with the Court's order, warnings are not an absolute condition precedent under Rule 37. Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir. 1991) (failing to formally warn defendant before imposing sanctions under Rule 37 was not an abuse of discretion.) Moreover, there is nothing to indicate that a warning by the Court would have had any effect on defendants who do not bother even to allege, much less prove, that they conducted a search which they themselves told the Court was necessary.

This case is, however, distinguishable from Insurance Corp. of Ireland in that the district court in that case found two other grounds, independent of the Rule 37 sanction, for holding the defendants subject to personal jurisdiction. 456 U.S. at 699. Also see, e.g., Knox, 2005 WL 712005 at *5 (noting that two other federal courts had concluded that defendants were subject to personal

---

[9] See, e.g., Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction at 10-11.

[10] The Court is aware that plaintiff has sought and failed to have defendants found subject to personal jurisdiction in other states. However, unlike the Pennsylvania litigation, where the court found that "plaintiff has not produced any evidence to prove" that documents were being withheld, Opp. at 7, the evidence in this case suggests otherwise.

jurisdiction in the U.S.); Volkart Brothers, 130 F.R.D. at 289 (finding jurisdiction against one defendant because it likely comprised a "single entity" with another defendant in the same case against whom jurisdiction had previously been found.) Although the Court believes, as stated above, that a finding of personal jurisdiction is justified on the facts of this case, the imposition of a lesser sanction is likely to be equally effective here.

The plaintiff in Koehler v. The Bank Of Bermuda, Ltd. asked the court to find defendant subject to personal jurisdiction under Rule 37 when defendant "persisted in a pattern of inactivity" throughout discovery. 2003 WL 289640 at *3. Noting that defendant, a foreign bank, "had in place only minimal document-retention practices," the court agreed that defendant's failure to produce requested discovery "impacted adversely, at least to some degree," plaintiff's ability to discover documents that might establish personal jurisdiction over defendant. Id. at *12. However, because the impact against plaintiff was more speculative than substantial, the court decided that a lesser sanction was appropriate. Id. Rather than finding personal jurisdiction, the court shifted the burden of proof on the jurisdictional issue from plaintiff to defendant. Id. at *13. In so doing, the court specifically noted that defendant retained a short institutional memory, and that it was "appropriate to put the onus for such memory loss" on defendant in light of its failure to comply with discovery. Id.

In this case, MAL, like the defendant in Koehler, retains a short institutional memory. Although the Swiss judge who conducted Atil's deposition noted in his March 30, 2004 letter to the Court that business records must be kept for ten years under the laws of Switzerland, Atil has failed to produce any records held by its manager, Acomarit, even though Acomarit is a Swiss company. Moreover, Atil stated that he destroyed certain documents notwithstanding the fact that he was aware

14

that a lawsuit was pending because he did not think there would be a connection between those documents and the accident underlying this action. Tr. 11. Rule 37 contemplates flexible application tailored to the particular circumstances of each case. Given the decision of MAL's chief decision-maker and custodian of records, it is appropriate, as a lesser sanction under Rule 37, to shift the burden to MAL to prove that personal jurisdiction in this action does not exist. Since defendants failed to produce documents that Atil testified existed, the Court shifts the burden and defendants shall bear the burden of proof on the jurisdictional issue. The Court shall not be sympathetic to defendants' argument that it is "impossible for them" to bear this burden as they would have to "prove a negative."[11]

### b.   The Sanction of Costs and Fees

Plaintiff also requests that MAL be sanctioned under Rule 37 for the costs plaintiff incurred in bringing the instant motion. Plaintiff's request is granted. "[T]he court shall require" a party who fails to comply with its orders to "pay the reasonable expenses, including attorney's fees, caused by its failure," unless such failure was substantially justified or the award of expenses would be unjust. Fed. R. Civ. P. 37(b)(2)(E). MAL's unjustified failure to comply with the Court's July 16, 2004 order caused plaintiff to file the instant motion. Accordingly, MAL shall pay the reasonable expenses, including attorney's fees, that plaintiff incurred in bringing this motion. Plaintiff shall submit an affidavit in support of his application for fees and expenses, including supporting

---

[11] This argument echoes petitioner's losing argument in Insurance Corp. of Ireland: "Petitioners' basic submission is that to apply Rule 37(b)(2) to jurisdictional facts is to allow fiction to get the better of fact and that it is impermissible to use a fiction to establish judicial power, where, as a matter of fact, it does not exist. In our view, this represents a fundamental misunderstanding of the nature of personal jurisdiction." 456 at 701.

15

documentation, by July 22, 2005. MAL shall either advise the Court that it has reached an agreement with plaintiff regarding his fee request or submit its opposition to the request by August 5, 2005.

### c. The Motion to Compel

Plaintiff's motion to compel MAL to produce the documents required by the Court's July 16, 2004 order is granted. MAL shall produce all of the documents required by the Court's previous order by August 19, 2005. As the burden has shifted to MAL to show that it is *not* subject to personal jurisdiction in this Court, and MAL opines that some of the requested documents might establish a lack of jurisdiction if they exist and can be produced, it has a fresh incentive to begin a diligent archival search.

Because discovery was ordered in this case only as to the issue of the jurisdiction, and the Court will find that jurisdiction exists unless defendants can now prove its absence, the Court will order no further sanctions against MAL if it fails to produce any further discovery. This is so because if MAL fails to produce any further discovery, plaintiff shall gain the most he could hope for at this stage in the litigation, which is a finding that MAL is subject to personal jurisdiction in this Court. The Court will consider imposing additional sanctions against MAL if its production pursuant to this order justifies a finding that it has complied only selectively or has attempted to conceal or mislead. Plaintiff's request that the Court order an entry of default judgment against MAL if it fails to produce the required documents is therefore denied.

## CONCLUSION

Plaintiff's motion to sanction MAL by finding this defendant subject to personal jurisdiction in this Court is denied. Instead, the Court imposes the lesser sanction of shifting the burden of proof on the issue of personal jurisdiction to MAL. MAL shall produce its proof, if any, to the Court by August 19, 2005.

Plaintiff's motion to compel the production of the documents ordered by the Court on July 16, 2004 is granted, except that MAL need not provide documents as to its final payment to Hamshaw. Defendants shall produce all other documents as required by this order by August 19, 2005. Plaintiff's motion for the Court to enter a default judgment against MAL if it fails to comply with the Court's instant order is denied.

Plaintiff's motion for the award of the costs and attorney's fees in bringing the motion at bar is granted. Plaintiff shall submit an affidavit in support of his application for fees and expenses, including supporting documentation, by July 22, 2005. MAL shall either advise the Court that it has reached an agreement with plaintiff regarding this fee request or submit its opposition to the request by August 5, 2005.

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: June 30, 2005
Brooklyn, New York